The case on today's docket is the case of, and I am not going to attempt to butcher this name, Szczeblewski. We have Karen Carnine for the appellee, and you can go ahead and be seated. And we have Mr. George Ripplinger for the appellee. So you can begin when you're prepared to do so. Good morning and thank you. May it please the Court. My name is Aaron Carnine. I represent the appellants Geary and Szczeblewski. I will refer to him as husband. Preliminarily, despite the fact that the two people separated in 1999 and this case has been going on for 12 years, I hope to present a single isolated issue, the issue being maintenance. Maintenance was originally awarded. It was modified and then it was denied a third complication. I appealed that third denial. The three dates that are of importance, I will just refer to them as 2002, 2003, and 2010. 2002 was the original judgment for the District of Maryland. In 2002, there was an order that modified maintenance. In 2010, there was an amended order that kept maintenance the same, but did not modify it. It is that order which I'm appealing. I cited various cases in this brief. The purpose of those cases are simply illustration. This is a maintenance case, so the trial court necessarily considered factors that it should consider for maintenance. The cases I cite in my briefs are similar cases, but in each case, a lesser amount of maintenance was awarded and it was not awarded permanently. So basically, three dates. 2002, husband's income potential, says that the trial court, was $50,000. Wife's was zero. Husband was not getting his pension. The maintenance was awarded at $100 per week. Those were the circumstances in 2002. After those circumstances, this case actually saw its first appeal and it proceeded through this court. There's a Rule 23 for your information, but this court heard this case and basically affirmed the trial court's decision at that time. The very first judgment in 2002. Next, move to August 2003. The wife filed a motion to modify maintenance because husband no longer had a $50,000 earning potential. He had a job and was making money. Court found that he had a $60,000 ability. It's too gross that much per year. So based on his $60,000 ability, wife's zero income, husband not receiving pension, wife therefore not receiving half of his pension, the court set maintenance at $240 per week. Now this third order, the 2010, was the husband's request to modify maintenance. The husband's request. Because he said, I retire. So he retired. There were no issues of purposeful retirement. There were no issues regarding any problems with having early retirement or anything like that. So retired husband now earns zero. I'm sorry, I can't hear you. I'm sorry, Your Honor. Husband now earns no money from an employer. So because of that, an additional amount to wife kicks in. In the original judgment, 2002, wife's awarded half of his pension. So in 2010, or about the time he retires, his income drops to zero. Wife's remains at the $240 per week maintenance, and wife's also increases by the amount of pension that she's earned. So the circumstances as they exist right now, and in 2010, are the husband's income, employment income, is zero. He and the wife split their pension, split his pension. He gets $1,300 a month. Wife gets $1,300 a month from his pension. And that's his only income. And he is also still to pay maintenance $240 per week. So the current effect of that is wife gets half his pension plus the maintenance. She gets $2,400 a month. Husband does not have an income anymore. Excuse me. Does he get any income at all from the farm that he's in partnership with his brother? That is a good question, and that is exactly one of the problems in this case. To answer your question, that is one of the problems in this case, which was never fully addressed. The August 11, 2003 order to modify maintenance, which increased maintenance, the trial court found that this financial affidavit was incorrect. It was incomplete. It did not include money that it maybe should have included for the farm. It was – showed $40,000. But the court said, well, you're missing a couple of other things from the farm income, so we feel you have a $60,000 ability. So the question I have is that same question, Your Honor. What did the court at this most recent order consider? Did it consider his farm income? Now, the wife, in her brief, submits a particular case, for reference, Shive, S-H-I-V-E, where her husband had a business. Her husband was reluctant in providing information about that business, so the court awarded maintenance based on that lack of information. The Shive case, the husband started that business after the divorce. This case, this business existed since 1977 or 78, the entire time. So presumably at the very first 2002 judgment, the business was considered. And presumably at the 2003 judgment, the business was also considered. So in the 2010 judgment, it's difficult to tell whether the business was considered or not. The judge, in his 2010 order, essentially said, I've considered everything that has occurred so far. What was the evidence? Was there anything in the evidence as to what the income was? There wasn't really. That's one of the problems with this case, was the lack of discovery on behalf of the husband to provide that information. That was one of the problems. So my question then is, was he penalized for not providing information? The information that he should have provided. Was that an affidavit or testimony? He had an affidavit in 2003, and he had another affidavit later in 2007, which was a bit late from the 2010 order. What was the testimony or evidence at the 2010 hearing? The 2010 hearing, and forgive me, Your Honor, I was not the attorney on the trial court, so 12 years of history is kind of difficult for me to put together. It was my understanding that the parties did testify and that the court found because of the testimony that other issues may have existed, and it's not real clear what fact that is. Wasn't there some disclosure of over half a million dollars in value? The very first 2002 order found that the farm was non-marital, and this court deferred from that. That number that you're speaking of is the value of that non-marital farm. It's $500,000. They owed $225,000 in debt on it. So throughout this, you cannot tell if the farm was considered. I submit that if it was considered, then it necessarily would have been considered in 2002 and 2003. If it was not considered, then husband receiving $300 a month and wife receiving $2,400 a month is against the manifest weight of the evidence, or if the farm was considered, then this acts as a penalty because the court didn't have as much information as they thought they wanted with respect to the farm income. That was off the side of my brief regarding the penalty because there's got to be something else that the court considered, and I don't know what that is. To test what the court may have considered, what could—and I don't know the answer to this question, but it's illustrative— what could my husband file a motion to modify based on now? What could change? We don't know because the most recent order doesn't mention farm income. So if the lack of discovery or the court's perceived lack of discovery is the penalty, why is she submitted a case that basically said that it is— the court in a discovery sanction can award a penalty proportionate to the gravity of the violation. It can award a penalty proportionate to the gravity of the violation. If this was a penalty, then my suggestion is it's certainly not proportionate because now you've been awarded a lifetime of $300 a month, life is $2,400 a month, with what hope of moving to modify because you can't tell what it was based on in the first place. Now, next, if that was a penalty, my brief cites Supreme Court Rule 219, which says where a sanction is imposed regarding failure to comply with discovery orders, the judge shall set forth with specificity the reason and basis of the sanction. So no sanctions—no reasons for a sanction were set forth in this most recent 2010 order. So therefore, if this lopsided amount was not a sanction for perceived lack of discovery, then it must necessarily be against the manifest way of the evidence because a husband has no income and 80 percent of his half his pension is going to pay maintenance. And that's about—that is all I have, unless there are any questions. Thank you. No, thank you. You'll have the opportunity for more questions. Thank you. Mr. Waffender, let's say you— May it please the Court. My name is George Waffender. I'm here on behalf of Kamala Shibuski. It's an interesting case that Jim Shibuski and his lawyer are complaining that the decision is not based upon fact. In fact, they had facts. They simply refused to give them to the Court. And I don't believe that a litigant can refuse to provide the evidence that he maintains and then complain that the case is not based upon the evidence that he could have produced. I agree with that premise, but do you think there's enough information for the Court to have come up with a reasoned value and not just gross speculation? I mean, we have to have it based on some evidence. At one point, Mr. Shibuski admitted to receiving $43,000 a year from the farm. There's evidence that he did all the work on the farm. There is evidence of significant income. A 600-acre farm produces money. Also, they have a lot of money. We receive a lot of money. There's evidence that they receive up to $50,000 a year from federal subsidies for the farm. Never, ever, did he ever tell the Court how much he made from the farm. To this day, he has not. Now, what's the Court going to do at that point in time? I guess they could have put Jim Shibuski in jail, but frankly, I think Jim Shibuski would sit in jail because he's that type of an individual. He's that intransigent on giving the information about how much money he made in this case. They talk about the farm being a business since a long time ago. There's a legal malpractice case going against her lawyer who represented her trial that started next week. And part of it involves this type of information. And what we do know is that there was no real estate owned by that partnership until after the marriage. It was all purchased during the marriage. It was all purchased in profits from the farm. The only person in this case who has the ability to provide the Court with the information necessary is Jim Shibuski. And yet he's complaining that an order has entered against him because the Court didn't have the very information that he could have provided in taking care of this whole situation. If he was so penniless, why didn't he do it? Why didn't he come in here and present it? On June 5, 2003, there was a conference call between the attorneys and the Court. At that time, the Court was told that Mr. Shibuski had mailed the information necessary in the case to the Court. It turns out that was not true. There was another conference call on June 13. The Court was informed the information would be mailed within two weeks. The information was never mailed. On June 30, July 15, and July 29, Pam's attorney wrote Jim's attorney, repeatedly requesting the information necessary for the Court to make a reasoned and informed decision. It was never, ever provided. What was known, and what did come out in the testimony, the hearing that finally was held, was that not only was his affidavit incomplete, he failed to list $5,500 of unemployment income. He failed to list any cash rent or foreign subsidy payments for the home place for him. He had acquired a new truck, but no evidence of how it was paid for, except that the transportation was paid for by the partnership, including the cost of the vehicle, fuel, insurance, and repairs. The testimony also established other hidden benefits for Jim. Real estate taxes, insurance, and a home place were paid for the partnership. None of this information, none of the specific dollars and cents, were presented to the Court. Jim Shabluski, he was so penniless, all he had to do was come in and present that evidence to the Court. He was ordered to do so. It was requested. All he did was sit back and thumb his nose at the Court. Thumb his nose at the opposing counsel and say, you can't make that. And then I'm going to come back in and complain about it when I get to the appellate court. This case has been going on for 12 years. Things have to end. The only thing that's happened here is both parties have been bleeding money for legal fees over a situation that this man had the ability to stop at any time by coming in and presenting the evidence of what he made on that fall. He never did it, and this Court shouldn't allow it to continue on it again. That's the reason we asked for attorney's fees in this case. A man shouldn't be allowed to complain about a decision that's made for lack of evidence when he is the reason there was no evidence. Thank you. Thank you, Mr. Ripken. Mr. Carnine. Two quick things, thank you. The original 2002 judgment for the Court's reference at C256, the Court, in its awarding of maintenance, the trial court said, in addition, Jim, as the benefits from his one-half ownership in the partnership of the crop income and farm subsidy benefits of the home place, the 2002 order considered the farm. Secondly, attorney's fees were mentioned. Throughout this case, there are fees awarded, which I submit it is attorney's fees, that it is an appropriate sanction if this actually was a sanction in the first place. Attorney's fees were awarded several times. They were paid. So, finally, the second point is that if a penalty is at issue, then it should have been legal fees, which it was, rather than a lifetime of maintenance at these two lengths. This farm is a partnership. Isn't there a partnership federal income tax return to be filled out? Was that ever filed in the Court? It is a partnership, Your Honor. Was the federal income tax farm ever filed in the Court? To answer your question, I don't recall. Okay. I don't recall. It will be on the record. If it's not on the record, it wasn't filed properly. And I apologize. The history of this case is voluminous. Unless there are any other questions, it's all in there. Thank you. Thank you both for your briefs and arguments. We'll take the matter into advice.